# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WOLFRAM ALPHA LLC,                          :
                                         :
    Plaintiff,                 :        Civil Action No.:        19-3361 (RC)
                                         :
    v.                         :        Re Document Nos.:        5, 6
                                         :
KENNETH T. CUCCINELLI, Acting               :
Director, U.S. Citizenship and Immigration  :
Services, *et al.*,                          :
                                         :
    Defendants.                :

## <u>MEMORANDUM OPINION</u>

### GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE

Plaintiff Wolfram Alpha LLC ("Plaintiff") brings a civil action under 5 U.S.C. §§ 702, 704 of the Administrative Procedure Act ("APA") against Kenneth Cuccinelli as Acting Director of the U.S. Citizenship and Immigration Service ("USCIS"), Kevin McAleenan as Acting Secretary of the U.S. Department of Homeland Security ("DHS"), and Kathy Baran as Director of the California Service Center ("CSC") (collectively, "Defendants") for the September 18, 2019 denial of Plaintiff's nonimmigrant petition to obtain an H-1B visa for the benefit of non-party Suguru Tokuda.  Compl. ¶¶ 1, 4, ECF No. 1.  Plaintiff alleges that Defendants' denial of the petition "constitutes final agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law" and "[n]o rational connection exists between the conclusions asserted by USCIS in its denial and the facts in the record."  Compl. ¶¶ 38–39.

Plaintiff filed this action in the U.S. District Court for the District of Columbia on November 7, 2019.  On January 6, 2020, Defendants moved to transfer venue to either the Central District of California or the Central District of Illinois (together, "Transferee Districts") and for an

extension of time to respond to the Complaint.  Plaintiff claims that venue is proper in the District of Columbia where the action was filed.  Upon consideration of the parties' submissions, the Court will grant the motion to the extent Defendants seek to transfer venue to the Central District of Illinois and grant the requested extension of time.

## I.  BACKGROUND

Plaintiff, part of the Wolfram group of multinational companies, is a technology company headquartered in Champaign, Illinois.  Compl. ¶¶ 2, 9.  Mr. Tokuda has worked for Plaintiff since August 2018 as a Quality Assurance Engineer after earning a Master of Science degree in Information Systems from Illinois State University in May 2018.  Compl. ¶¶ 20–21.  In this role, Mr. Tokuda develops and executes test plans to identify software problems.  Compl. ¶ 3.  Plaintiff and Mr. Tokuda are located within the Central District of Illinois.[1]  USCIS and DHS are located in the District of Columbia.  CSC is located in the Central District of California.[2]

On April 11, 2019, USCIS accepted Plaintiff's H-1B nonimmigrant petition filed on behalf of Mr. Tokuda.  Compl. ¶ 19.  On July 16, 2019, USCIS issued a Request for Evidence, requesting additional information to show Mr. Tokuda's position meets the requirements for a specialty occupation.  Compl. ¶ 23.  On August 19, 2019, Plaintiff submitted its response, including a letter from Plaintiff's General Counsel providing explanations of the position's duties and minimum requirements as evidence of the nature of the position as a specialty occupation.  Compl. ¶ 24.  USCIS denied Plaintiff's Petition on September 18, 2019, claiming that the position did not meet the definition of a specialty occupation under 8 C.F.R. § 214.2(h)(4).  Compl. ¶ 28.  As a result of the denial, Mr. Tokuda is at risk of losing his work authorization and Plaintiff is at risk of losing

---

[1] Plaintiff's headquarters are located in Champaign, Illinois, which is within the Central District of Illinois.

[2] CSC is located in Laguna Niguel, California, which is within the Central District of California.

an employee upon the expiration of Mr. Tokuda's current Employment Authorization Card on June 4, 2021.  Compl. ¶¶ 20, 35–36.

Defendants moved to transfer venue to the Central District of California or the Central District of Illinois and to extend the time to respond to Plaintiff's Complaint until 21 days after this Court resolves the transfer motion.  *See* Defs.' Combined Mot. to Transfer Venue and Extend Time 1, ECF No. 5; Defs.' Mem. in Support of Defs.' Mot. to Transfer ("Mot. to Transfer") 3, ECF No. 5-1. [3]  Defendants argue that while the District of Columbia is not an improper venue, this action has little connection to the District because none of the activities at issue occurred in this District nor is Plaintiff located in this District.  Mot. to Transfer 3.  Plaintiff opposes the motion, arguing that granting Defendants' motion would delay the case, create unnecessary burdens on Plaintiff, and disregard Plaintiff's choice of forum.  Pl.'s Opp'n to Defs.' Mot. to Transfer Venue ("Opp'n to Transfer") 1–2, ECF No. 7-1.  The combined motions to transfer venue and for extension of time are now ripe for decision.

## II.  LEGAL STANDARD

The federal change of venue statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Even if a plaintiff has brought a case in a proper venue, a district court may transfer it to another district.  *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 274 (D.D.C. 2018) (citing 28 U.S.C. § 1404(a)).  In making the decision to transfer, the court must make an "individualized, case-by-case consideration of convenience and

---

[3] On the electronic docket, the Combined Motion, ECF No. 5, is entitled "Motion to Transfer Case."  An identical copy of the Combined Motion was entered separately on the docket as ECF No. 6 and is entitled "Motion for Extension of Time to File Answer."  In the order accompanying this memorandum opinion, the Court will adopt the docket's nomenclature and treat the two motions as distinct.

fairness." *Abusadeh v. Chertoff*, No. 06-cv-2014, 2007 WL 2111036, at *3 (D.D.C. July 23, 2007)

(quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The moving party has the burden to establish that transfer is proper. *Chauhan v. Napolitano*, 746 F. Supp. 2d 99, 102 (D.D.C. 2010). To establish transfer of venue is proper, Defendant must first show that Plaintiff could have sued in the proposed transferee district. *Id.* Once this threshold is satisfied, Defendant must show that, on balance, private and public interests weigh in favor of transfer. *Id.* In deciding a motion to transfer, a court may consider materials outside the pleadings. *Id.*

## III. ANALYSIS

### A. Where the Action Could Have Been Brought

The Parties do not disagree that the action could have been filed in the U.S. District Courts for the District of Columbia, the Central District of California, or the Central District of Illinois. *See* Mot. to Transfer 3; Opp'n to Transfer 4. "In an action brought against an officer or employee of the United States or any of its agencies, venue is proper in any district where (1) a defendant resides; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) plaintiff resides if no real property is involved in the action." *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 18 (D.D.C. 2008) (citing 28 U.S.C. § 1391(e)).

Venue is proper in the Central District of California because that is where the challenged federal action – CSC's denial of Petition – occurred and where one defendant resides. Because CSC's denial of Petition gives rise to Plaintiff's cause of action, the Central District of California is a proper venue for this action. *See Al-Ahmed*, 564 F. Supp. 2d at 18 (finding venue in the Eastern District of Virginia proper where defendant, acting District Director of USCIS's Washington field office, resided in that district and plaintiff's applications for travel document and employment

4

authorization were processed in that office).  Kathy Baran, Director of CSC, performs her official duties within the Central District of California and therefore resides in that district. *See McAfee, LLC v. U.S. Citizenship and Immigration Services*, No. 19-cv-2981, 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019) (finding that an action could have been brought in the Central District of California because Kathy Baran resides in the district because she performs her official duties at the CSC in Laguna Niguel, California, which is within the Central District); *see also Lamont v. Haig*, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978) ("What controls is the official residence of the federal defendant where the official duties are performed and not the personal residence of an individual who is a defendant.").

Venue is also proper in the Central District of Illinois because Plaintiff is located in that district (in Champaign, Illinois) and Mr. Tokuda is employed in that district.  *See Ngonga*, 318 F. Supp. 3d at 274 (finding that because plaintiffs resided in Lovettsville, Virginia, which is within the jurisdiction of the Eastern District of Virginia, that district was a proper venue).

Accordingly, this action properly could have been brought in the U.S. District Courts for either the Central District of California or the Central District of Illinois.

## B.  The Balance of Private and Public Interests

Because the threshold has been satisfied, Defendant must now "demonstrate that considerations of convenience and the interests of justice weigh in favor of a transfer." *Chauhan*, 746 F. Supp. 2d at 102.  The Court has broad discretion to "balance case-specific factors related to the public interest of justice and the private interests of the parties and witnesses." *Al-Ahmed*, 564 F. Supp. 2d at 19 (quoting *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32 (D.D.C. 2008)).

### 1.  Private Interests

To determine whether transfer of venue is in the private interest, the Court must weigh six factors including: (1) the plaintiff's choice of forum, (2) the defendant's choice of forum, (3) where the claim arose, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof.  *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009). The Court will weigh each of these factors in turn, although in slightly different order.

#### a.  Location of Activities That Gave Rise to the Action

The location of activities giving rise to the action weighs heavily in favor of transfer. Defendants argue that no activity in the District of Columbia gave rise to this action regarding an allegedly erroneous decision made by CSC in California in response to a petition by a company in Illinois.  Mot. to Transfer 5.  Plaintiff responds that cases decided on an administrative record do not need to be heard in the district where the record was created.  Opp'n to Transfer 13.  Instead, Plaintiff urges that this factor requires that the Court focus on the location of where the claims arose and argues that this case should be heard in the District of Columbia because Plaintiff is a multi-state company, as it has offices in Champaign, Illinois; Phoenix, Arizona; and Somerville, Massachusetts (but none in the District of Columbia).  *Id.*

"When the material events that form the factual predicate of a plaintiff's claim did not occur in his chosen forum, transfer is favored."  *Ngonga*, 318 F. Supp. 3d at 275 (citing *Tower Labs, Ltd. v. Lush Cosmetics Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018)); *see also McAfee*, 2019 WL 6051559 at *1 ("This district has neither meaningful ties to nor particular interest in a California company's challenge to a California Service Center's decision to deny a particular H-1B visa for a California employee.").  In actions challenging agency decisions under the APA, "courts generally focus on where the decisionmaking process occurred to determine where the

claims arose." *Ngonga*, 318 F. Supp. 3d at 275 (citing *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009)).   Plaintiff cannot "manufacture venue in the District of Columbia," *Pearson v. Rodriguez*, 174 F. Supp. 3d 210, 213 (D.D.C. 2016), by naming the administrators of USCIS and DHS as defendants.   *See Aftab*, 597 F. Supp. 2d at 81 ("naming a cabinet secretary and agency directors does not alone anchor venue here"); *cf. id.* (noting that courts in the District of Columbia have found venue in the District to be appropriate when the agency official was personally involved in the decision-making process) (citing *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001)).

The relevant activities on which Plaintiff's claims are based occurred within the Transferee Districts.   Plaintiff's petition was adjudicated by CSC; thus, any error in the decision-making process would have occurred at CSC's office in the Central District of California.   Compl. ¶ 13; Opp'n to Transfer 12.   Similarly, the factual basis necessitating the petition in the first place concerns Mr. Tokuda's continued employment with Plaintiff in the Central District of Illinois.

Importantly, this case seeks review of CSC's denial of Plaintiff's individualized petition only and does not involve either a broad challenge to USCIS or DHS policies or raise any allegation that USCIS or DHA administrators in the District of Columbia played any role in adjudicating Plaintiff's petition.   Consequently, this factor weighs strongly in favor of transfer because venue is most appropriate in the district where the claims arose – either the Central District of California or the Central District of Illinois.

*b.  Plaintiff's Choice of Forum*

Given the case was filed here, the District of Columbia is obviously the forum of Plaintiff's choice.   Thus, this factor weighs against transfer, but only slightly.   Courts usually defer to the plaintiff's forum choice.   *Gyau v. Sessions*, No. 18-cv-407, 2018 WL 4964502, at *2 (D.D.C. Oct.

15, 2018).  But deference to the plaintiff's choice of forum is lessened when the plaintiff's choice is not the plaintiff's home forum.  *Abusadeh*, 2007 WL 2111036 at *4 (quoting *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002)).  Deference is also "lessened when the plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter.'"  *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (quoting *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979)).

Although Plaintiff's choice of forum is the U.S. District Court for the District of Columbia, deference to that choice is limited because Plaintiff is not a resident of the District of Columbia and this action lacks meaningful ties to the District of Columbia because, as discussed in the previous section, this action stems from activities that occurred in the Transferee Districts. Therefore, this factor weighs against transfer, but only slightly.

*c.  Defendant's Choice of Forum*

The Defendant's choice of forum factor weighs in favor of transfer.  Transfer is favored when defendants' preferred forum is also the plaintiff's home forum.  *Aishat v. Dep't of Homeland Security*, 288 F. Supp. 3d 261, 269 (D.D.C. 2018).  Because this factor is not ordinarily afforded deference, defendants must carry the burden to show litigating in their selected forum is more convenient and just.  *Id.* (doubting the extent to which "this factor carries any heft").  However, where, as here, plaintiff's forum choice receives little deference and other factors favor transfer, defendants receive some deference for their choice of forum.  *Ngonga*, 318 F. Supp. 3d at 275. Defendants have selected the Central District of Illinois, the Plaintiff's home forum, as one of their preferred fora.  Therefore, while this factor weighs in favor of transfer generally, additional deference is afforded to Defendant's selection of the Central District of Illinois.

### d. Convenience of the Parties

The next factor, convenience of the parties, also weighs in favor of transfer.  Defendants argue that a hearing in either the Central District of California or the Central District of Illinois would be more convenient for the parties because at least one party is located in each district while neither is located here.  Transfer Mot. 5.  Plaintiff argues that, because Plaintiff and Mr. Tokuda are located in Illinois, the Central District of California is not more convenient – a point that may argue against a transfer to California, but actually supports a transfer to Illinois.  Opp'n to Transfer 14–15.  Perhaps acknowledging that weakness, Plaintiff further argues that, because Defendant has not indicated a preference between the Central District of California and the Central District of Illinois, and because Plaintiff's counsel is admitted to practice in the District Court for the District of Columbia, then venue should remain in the District of Columbia.  *Id.*

Venue is convenient where parties are located.  *See Chauhan*, 746 F. Supp. 2d at 104.  A plaintiff "cannot reasonably claim to be inconvenienced by litigating in [his] home forum."  *Aishat*, 288 F. Supp. 3d at 269 (quoting *Tower Labs, Ltd.*, 285 F. Supp. 3d at 326).  The location of counsel is not a consideration under this factor.  *See Chauhan*, 746 F. Supp. 2d at 104 (citing *McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40–41 (D.D.C. 2003)).

Because transferring venue to either the Central District of California or the Central District of Illinois would be more convenient for the parties, this factor weighs in favor of transfer.  That CSC and Plaintiff are located in separate states does not make the District of Columbia a more convenient venue than either of the districts in which the parties are located.  Because Plaintiff is located in the Central District of Illinois and Plaintiff cannot reasonably object to venue in that district, this factor strongly favors transfer of venue to the Central District of Illinois in particular.

*e. Convenience of the Witnesses and Ease of Access to Evidence*

Finally, the remaining two private interest factors further weigh in favor of transfer. Defendant argues that, while unlikely, APA cases can sometimes involve witnesses or evidence beyond the administrative record. Thus, in such situations where witnesses or additional evidence become necessary, the Transferee Districts are more convenient because the witnesses are located there. Defs.' Reply in Support of Transfer Mot. 6, ECF No. 9. Plaintiff retorts that Defendants have not suggested any intent to call witnesses or introduce evidence outside of the administrative record.

When claims arise within a geographic district, that district is more likely to be convenient for potential witnesses and more likely to house evidence. *McAfee*, 2019 WL 6051559 at *2. In cases reviewing administrative records, the location of witnesses may be less significant, but the location of the administrative record carries some weight. *See Aftab*, 597 F. Supp. 2d at 83 (quoting *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 69 (D.D.C. 2003)). However, the weight of the location of evidence is limited by "modern technology" that "allows most documentary evidence to be easily transferred and therefore the location of documents is less important . . . than it once was." *Taylor v. Shinseki*, 13 F. Supp. 3d 81, 90 (D.D.C. 2014). Additionally, witnesses and evidence need not be identified for their location to weigh in favor of transfer of venue. *See Aishat*, 288 F. Supp. 3d at 270–71 (finding convenience factor weighed in favor of transfer where, even though parties had not indicated whether witnesses would be called or evidence introduced, persons or records that might be relied upon would be found in the district where the plaintiff was interviewed and application was adjudicated). *See also McAfee*, 2019 WL 6051559 at *2 ("[T]he claims arose primarily in the Central District. For that reason, the Central District likely will be more convenient for *potential* witnesses and evidence") (emphasis added); *Abusadeh*, 2007 WL

2111036 at *8 ("*[T]o the extent that any relevant witnesses and documents exist*, they will be the individuals involved in making the ultimate decision on Plaintiff's application for naturalization as well as the documents and records related to his application, all of which are located in the Southern District of Texas.") (emphasis added).

The administrative record, any witness, and any additional evidence are likely to be located in the Central District of California or the Central District of Illinois.  Though Defendants have not indicated the location of the administrative record, it is likely located in the CSC office in the Central District of California, where almost all of the Defendants' activity relating to this action occurred.  Additional evidence beyond the administrative record is likely to be housed within CSC and witnesses related to Defendants' activities are likely to reside in California.  Because CSC is located in the Central District of California, in the event witnesses are called, travel to court is likely to be more convenient and evidence more accessible than if this action were adjudicated in the District of Columbia.

Likewise, the Central District of Illinois would also be a convenient forum because Plaintiff's application originated based on occurrences within that district. Any witnesses or evidence related to the underlying facts giving rise to the H-1B visa application are likely to be found in the Central District of Illinois.  If testimony from Mr. Tokuda and those Wolfram Alpha officials that seek to employ him will be introduced, venue in the Central District of Illinois would allow for convenient access to potential sources of evidence and witnesses.  *See Chauhan*, 746 F. Supp. 2d at 104 (finding the three convenience factors weighed in favor of transfer to the Northern District of Texas when the plaintiff sought to compel action at a Dallas Field Office located in the Northern District of Texas, plaintiffs were located in that district, plaintiffs' files were located in that district, and the decision was to be made in that district).

11

Hence, the witness convenience and ease of access to evidence factors weigh in favor of transfer to either the Central District of California or the Central District of Illinois. But, because this sort of administrative review case is likely to be determined on the administrative record and "modern technology allows most documentary evidence to be easily transferred," the weight of these factors is light. *Taylor*, 13 F. Supp. 3d at 90.

### 2. Public Interests

To determine whether transfer is in the public interest, the Court must consider the following factors: (1) the transferee court's familiarity with the applicable law; (2) the relative congestion of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Al-Ahmed*, 564 F. Supp. 2d at 19.

### a. Transferee Court's Familiarity with Applicable Law

Plaintiff claims that venue should remain in the District of Columbia because this district is distinctly familiar with review of cases where an employer challenges an agency's denial of employment-based visa petitions. Opp'n to Transfer 5. Defendant argues that there is no reason to suspect that this Court has greater familiarity or understanding of the APA than the Transferee Districts. Mot. to Transfer 7. The Court concludes that this first public interest factor is neutral.

Because Plaintiff pursues federal claims requiring interpretation of federal law, "[t]he transferee district is presumed to be equally familiar with the federal laws governing [the plaintiff's] claims." *Aftab*, 597 F. Supp. 2d at 83 (citing *Al-Ahmed*, 564 F. Supp. 2d at 20). When neither party contests that federal claims "could be handled *competently* by a court in either district," then this factor is neutral. *Aishat*, 288 F. Supp. 3d at 271 (emphasis added). In considering transfer of venue for review of federal immigration decisions, a district's history of reviewing decisions regarding specific types of petitions and visas does not bear on that district's

competency to adjudicate a case; each district is presumed competent in all matters of federal law. *See McAfee*, 2019 WL 6051559 at *1 (finding this factor neutral where both districts are "equally familiar" with federal law in reviewing CSC's denial of plaintiff's H-1B visa request (I-129 petition)); *Ngonga*, 318 F. Supp. 3d at 276 (finding this factor neutral where both transferee and transferor districts could "more than capably handle this" review of a denial of plaintiff's I-130 decision).

Plaintiff does not suggest that the Transferee Districts could not competently hear this case nor has Plaintiff explained why review of agency determinations of I-129 petitions (as opposed to other types of petitions and visas) or review of service center decisions (as opposed to decisions made by USCIS field offices) require a court to have a history of hearing these types of cases. *See* Opp'n to Transfer 5, 9. Plaintiff does not dispute that the Transferee Districts "certainly are familiar with the Administrative Procedures [sic] Act and federal immigration law." *Id.* at 5. Of the 182 cases in the federal courts involving a Form I-129 Petition for a Nonimmigrant Worker reviewed by a USCIS Service Center, eighty-six, or fewer than half, are currently pending in the U.S. District Court for the District of Columbia. Alexander King Decl. in Supp. of Transfer Mot. ("King Decl.") 2, ECF No. 9-1. Clearly, more than half of these cases are ably being handled in other districts and this Court does not have a monopoly on understanding immigration law. In fact, until recently, immigration cases were a rarity in this district. Accordingly, experience with reviewing I-129 Petitions adjudicated by Service Centers does not suggest the Central District of California or the Central District of Illinois are not also competent to review these immigration decisions. Because Plaintiff has not argued that Transferee Districts could not competently review this case, this factor is neutral.

Moreover, if the Court were to passively accept Plaintiff's argument that the District of Columbia should be available to all plaintiffs challenging I-129 determinations regardless of how attenuated the connection to the District, this District could become deluged with immigration cases simply because DHS and USCIS, like almost all federal agencies, are headquartered here. Plaintiff suggests that the District of Columbia is the best venue for I-129 cases. Opp'n to Transfer 5. But there is no substantial distinction between review of an I-129 decision and review of any other immigration petition. Plaintiff's reasoning, taken to its logical conclusion, would indicate that every federal administrative review case can not only be brought here, but *should* be brought here. That is not feasible. All five USCIS Service Centers adjudicate over six million[4] immigration related applications, petitions, and requests annually. King Decl. 1. If every immigration case seeking judicial review of service center actions were brought in the District of Columbia, this District would quickly be overwhelmed. This burden on court resources cannot be justified for cases having minimal connection to this District.

Consequently, because the District of Columbia, the Central District of California, and the Central District of Illinois are all competent and equipped to review federal immigration cases, including denials of I-129 petitions, this factor is neutral.

b. *Relative Congestion of the Courts*

Defendants further argue that this action should be transferred to the Central District of California based on the relative congestion of this Court versus that of the Transferee Districts. In support of this argument, Defendant states that the median time from filing to trial for civil cases is lower in California than in the Central District of Illinois or the District of Columbia. Transfer

---

[4] This figure does not include applications, petitions, and requests brought through USCIS field offices or otherwise outside of the USCIS Service Center process.

Mot. 7 (citing *U.S. District Court – Federal Court Management Statistics – Profiles*, UNITED STATES COURTS, (June 30, 2018) https://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distprofile0630.2018.pdf (last visited Jan. 2, 2020)).  Plaintiff responds by arguing that venue should remain in the District of Columbia by citing a separate set of statistics that indicate that this Court has a lower overall caseload and a shorter median time from filing to disposition for civil cases than the Transferee Districts.[5]  Opp'n to Transfer 5–6 (citing *U.S. District Court – Federal Court Management Statistics – Profiles*, UNITED STATES COURTS (June 30, 2019) https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf   (last visited Jan. 2, 2020)).

Courts have held that when statistics regarding relative congestion are mixed, this factor should be deemed as neutral.  *McAfee*, 2019 WL 6051559 at *1 (finding the relative congestion factor neutral where the District of Columbia had longer wait times for cases that reached later litigation stages, slightly longer processing time for cases resolved short of trial, but the overall case load was significantly lower than the Central District of California, the transferee district). *C.f. Chauhan*, 746 F. Supp. 2d at 105 (finding relative congestion factor weighed slightly in favor of transfer where the only evidence before the court showed that the median time for resolving civil cases from filing to disposition was two months shorter in the transferee district); *Aftab*, 597 F. Supp. 2d at 83 (finding relative congestion factor weighed only slightly in favor of transfer where the transferee district had a lower median time from filing to disposition, but a larger total case load).  These statistics are not perfect indicators of court congestion as they may be influenced by additional factors.  *Aishat*, 288 F. Supp. 3d at 271 (quoting *United States v. H&R Block, Inc.*, 789 F. Supp. 2d 74, 84–85 (D.D.C. 2011)) ("Any disparities between the lengths of time from

---

[5] Statistics parties cite are listed in Table 1.

filing to trial may also reflect differences other than congestion, such as differences in the types of cases that are likely to be tried in each district and the level of discovery and pre-trial motion practice required in those cases.")

Depending on which metric a Court chooses to assess relative congestion, the weighing of this factor points in different directions.  For example, although the Central District of California has the shortest median time from filing to trial, it experiences significantly larger case loads. Whereas the Central District of Illinois has the smallest overall case load, but its median time from filing to trial is nearly as high as the District of Columbia.  And although the District of Columbia is not the least congested forum measured by any of the metrics presented to this Court, it is the most congested measured by median time from filing to trial.  Based on these competing and sometimes contradictory statistics, it would be difficult to conclude anything other than that this factor is neutral.

Table 1

| | Median Time from Filing to Trial – June 2018[6] (in months) | Median Time from Filing to Disposition – June 2019[7] (in months) | Overall Case Load – June 2019[8] |
|---|---|---|---|
| District of Columbia | 46.1 | 5.6 | 5091 |
| Central District of California | 20 | 5 | 14682 |

---

[6] *U.S. District Court – Federal Court Management Statistics – Profiles*, UNITED STATES COURTS (June 30, 2019), https://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distprofile0630.2019.pdf (last visited Feb. 18, 2020).

[7] *Id.*

[8] *Id.*

| Central District of Illinois | 42.8 | 10 | 1984 |

However, cases per judge are more indicative of congestion than the overall number of cases.  While parties do not reference per judge figures, this information is included in the same documents both parties cite.  Table 2 below shows cases per judge as of June 2018 and June 2019.  This metric indicates that the District of Columbia is the least congested district with nearly 200 fewer cases per judge than either of the Transferee Districts.  But as previously indicated, these statistics may be influenced by factors other than congestion, such as, for example, difference in the types of cases that are likely to be filed in each district.  *Aishat*, 288 F. Supp. 3d at 271.  Therefore, this factor weighs against transfer, but only slightly due to the equivocal nature of the data presented by the parties.

<u>Table 2</u>

|  | Pending Cases per Judgeship – June 2018[9] | Pending Cases Per Judgeship – June 2019[10] |
|---|---|---|
| **District of Columbia** | 305 | 339 |
| **Central District of California** | 486 | 524 |
| **Central District of Illinois** | 500 | 496 |

---

[9] *Id.*

[10] *Id.*

*c. Local Interest in Deciding Local Controversies at Home*

And, perhaps most important amongst the public factors, the local interest in deciding local controversies at home factor weighs in favor of transfer to the Central District of Illinois. Defendant argues that either of the Transferee Districts would be more interested to hear this case than the District of Columbia because the case presents a local controversy and Plaintiff seeks to compel action in California and Illinois.  Mot. to Transfer 6–7.  On the other hand, Plaintiff argues that because this case will be decided on a portable administrative record, the case law does not support transfer to the Central District of California where the decision was made.   Opp'n to Transfer 7–9.  Tellingly, Plaintiff is silent as to the appropriateness of a transfer to Illinois.

Common sense would dictate that "[t]here is a local interest in having localized controversies decided at home," including "controversies involving federal decisions that impact local environment and . . . controversies requiring judicial review of an administrative decision." *Abusadeh*, 2007 WL 2111036 at *8 (emphasis omitted) (quoting *Sierra Club*, 276 F. Supp. 2d at 70).  To determine whether a controversy is local in nature, courts consider factors including:

> where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy, whether the issue involved federal constitutional issues rather than local property laws or statutes; whether the controversy involved issues of state law, whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official.

*Aftab*, 597 F. Supp. 2d at 84 (quoting *Otay Mesa Property L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 126 (D.D.C. 2008)).  Applying these factors here, it is clear that these factors favor transfer to Illinois.

This case relates to a local issue: the hiring of an employee and obtaining proper immigration documentation for an Illinois-based employee to be authorized to work for Plaintiff

18

in its Illinois headquarters.  Simply because the review of an administrative record can take place anywhere (including here) does not mean that the local district does not have an interest in the controversy.  A locality "has a great interest in protecting its citizens from the unreasonable actions of [a government agency]."  *Canal A Media Holding, LLC v. U.S. Citizenship and Immigration Service*, No. 17-cv-6491, 2018 WL 7297829, at *1 (C.D. Cal. Sept. 30, 2018) (quoting *Coronel v. GEICO Ins. Agency, Inc.*, No. 12-cv-795, 2013 WL 3270574, at *4 (D. Ariz. June 27, 2013)).  In analyzing the private factors above, there is no dispute that the controversy arose from activities occurring in the Central District of California and the Central District of Illinois.  No activity occurred within the District of Columbia because Plaintiff does not allege that defendants located in the District of Columbia were involved personally in the decision to deny Plaintiff's petition. The Plaintiff's complaint does not challenge national policies or agency regulations.[11]  In a case that challenges an adverse decision on a single visa petition, the issue is not of national significance, but "presents an issue of far more limited importance."  *Ngonga*, 318 F. Supp. 3d at 277.

While this case involves federal immigration law, the impacts of the outcome of the case will be felt most acutely not in the District of Columbia, but within the Central District of Illinois. Plaintiff employs Mr. Tokuda at Plaintiff's location within the Central District of Illinois.  The impacts of a denial or approval of Plaintiff's petition for H-1B visa are felt most deeply at

---

[11] In Plaintiff's Opposition to Defendants' Motion to Transfer, Plaintiff states in passing that "the issues in this case reflect Defendants' direction of USCIS nationwide, and they are the same issues considered and decided most often by the courts in this District."  Opp'n to Transfer 2. However, this is not a clear assertion against a national policy, nor was it alleged in Plaintiff's Complaint.  Even if it were, Plaintiff's allegations on the merits of the case revolve around review of his petition specifically and the administrative record addressing the particular facts raised therein, not a broader policy or mass review of agency decisions.  *See Abusadeh*, 2007 WL 2111036 at *6; *Aishat*, 288 F. Supp. at 269–70; *Ngonga*, 318 F. Supp. 3d at 277; *McAfee*, 2019 WL 6051559 at *2.

Plaintiff's headquarters in Champaign, Illinois and in Mr. Tokuda's household also in Illinois. Plaintiff acknowledges the local impact of this determination in its Complaint when it emphasizes Mr. Tokuda's risk of losing his employment authorization and Plaintiff's risk of losing a "valuable employee."   Compl. ¶¶ 35–36.   Simply put, the determination of Plaintiff's immigration and employment status will not be felt in the same manner within the District of Columbia.

Because nearly all the impacts of CSC's decision and the outcome of this action will be felt most strongly in the Central District of Illinois and because the events giving rise to Plaintiff's Petition and this action emerged from that district, this factor weighs heavily in favor of transfer to the Central District of Illinois.

### 3.  Balancing of the Factors

As set forth above, the private and public interests collectively weigh in favor of transferring venue to the Central District of Illinois.

Of the private interest factors, one weighs heavily in favor of transfer, two weigh in favor of transfer, two weigh slightly in favor of transfer, and one weighs slightly against transfer. Although Plaintiff's choice of forum weighs against transfer, deference to that choice is weakened because the District of Columbia is not Plaintiff's home forum nor does the District of Columbia have factual ties to this action.  Therefore, Plaintiff's choice only weighs slightly against transfer. That the claim arose from activities within the Transferee Districts and not within the District of Columbia weighs heavily in favor of transfer.  Convenience of the parties also weighs in favor of transfer because both Plaintiff and CSC are located in one of the Transferee Districts.  And because the administrative record is likely located within the Central District of California and any witnesses or additional evidence is likely located within the Transferee Districts, the factors relating to convenience of witnesses and ease of access to evidence also weigh in favor of transfer.

However, the weight to be given to these two private interest factors is limited due to the likelihood this case will be decided solely on the administrative record and the technological ability to easily transfer documentary evidence to any district. Therefore, private factors five and six weigh only slightly in favor of transfer.

Of the public interest factors, one important one weighs strongly in favor of transfer, one weighs slightly against transfer and the final public factor is neutral. The District of Columbia and the Transferee Districts are equally competent in matters of federal immigration law, rendering the familiarity factor neutral. There is mixed evidence as to the relative congestion of the districts, but because, for the past two years, judges within the District of Columbia have had approximately 200 fewer pending cases than judges in either of the Transferee Districts, this factor weighs slightly against transfer. However, the local nature of Plaintiff's desire to hire Mr. Tokuda to work in Champaign, Illinois is of special importance to the community within the Central District of Illinois. Thus, the strength of this factor outweighs the weaker congestion factor and points the public interest factors in the direction of transfer.

In total, six of the private and public interest factors weigh in favor of transfer to varying degrees and only two factors weigh slightly against transfer. The one remaining factor is neutral. Therefore, transfer of this action to either the Central District of California or the Central District of Illinois is appropriate. *See Gyau*, 2018 WL 4964502 at *2 (holding that transfer was appropriate where private interest factors two and three and public interest factor three weighed in favor of transfer, private interest factor one weighed slightly against transfer, and the remaining factors were neutral).

And because Plaintiff cannot object to venue in its home forum, Defendant's choice of the Central District of Illinois weighs in favor of transfer to that district over transfer to the Central

District of California.  Moreover, because the largest impacts of the CSC's decision and this action will affect Plaintiff and Mr. Tokuda most strongly and they are located in the Central District of Illinois, that district is the most appropriate venue for this action.

## IV.  CONCLUSION

Because venue properly lies in the Central District of Illinois, and because the private and public interests at stake support the transfer, the Court will grant Defendants' motion and transfer the case to the Central District of Illinois.  The Court will also grant Defendants' motion for extension of time and allow Defendants to answer or otherwise respond to the Complaint within 21 days of the case being placed on the electronic docket in the U.S. District Court for the Central District of Illinois.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 21, 2020                                    RUDOLPH CONTRERAS
                                                            United States District Judge